JOHANNA GLYNIS, PETITIONER-DEFENDANT, v. CHARLES L. WRIGHT, RESPONDENT-PROSECUTOR.

Argued January 17th, 1939—Decided February 27th, 1939.

148

Before Justices CASE, DONGES and PORTER.

For the prosecutor, *Kalisch & Kalisch.*

For the defendant, *Isadore Rabinowitz.*

PER CURIAM.

This *certiorari* brings up for review a judgment of the Passaic County Court of Common Pleas affirming an award of compensation made to the petitioner-defendant in the Workmen's Compensation Bureau. The sole point for consideration is whether or not the accident which caused the death of defendant's deceased husband arose out of and in the course of his employment by the prosecutor.

Decedent, Peter Glynis, was employed as a watchman and caretaker at a building development of the prosecutor. The lands of prosecutor were situated to the west of Main avenue, Clifton, and fronted on the north side of Park Slope Terrace. There were three tracts, the first at the northwest corner of Main avenue and Park Slope Terrace, the second, to the west of the first, fronted on the north side of Park

Slope and was bounded by Manillo and Commerce streets, and the third, still further to the west, was on the far side of Commerce street and also fronted on Park Slope. On the second and third of these tracts houses had been built and were being offered for sale or were being built for the purpose of sale. On the first tract, the one nearest Main avenue, no construction was in process, and it appears there was a dumping ground thereon.

On the opposite, or easterly side, of Main avenue there was located a saloon, known as Neil's Tavern. The evidence indicates, and it seems to be undisputed, that decedent was crossing Main avenue from the west side to the east side for the purpose of returning empty beer bottles to this saloon, when he was struck by an automobile and killed. He was carrying several of the bottles in a burlap sack.

The prosecutor contends that the returning of these bottles was no part of his employment and that when Glynis left the tract and went into the street, with the purpose of crossing to the saloon on the opposite side, he departed from the course of his employment.

The evidence indicates that the bottles of beer were purchased and consumed by workmen of the prosecutor engaged in the building of the houses. It was their practice to leave them in the buildings or on the ground around the buildings.

Decedent's hours of employment were from four-thirty in the afternoon until midnight. His duties were to watch the unused lumber and materials and the houses; to see that the finished houses were kept locked; and "keep his eye on things in general." He had been instructed to pick up beer bottles that were left lying in or around the houses and to keep the premises generally clean. There is testimony that Glynis had been instructed by the superintendent to keep the place clean of debris and bottles, and that it was his practice to gather the bottles daily and carry them in a burlap bag as he did so. There is no evidence that decedent was ever told what to do with the bottles or other debris, although, as stated, there was a place upon one of the tracts where trash had been deposited.

There is no proof that Glynis was instructed to return the bottles to the saloon, nor evidence that would justify a finding that the employer knew it was his custom to so return them. The record is barren of any evidence that he returned these bottles for the benefit of or at the request of other persons, either fellow employes or the saloonkeeper, nor any evidence that he did so for his own benefit.

Admittedly, the handling of the bottles was part of his employment. He was supposed to keep the premises free of such debris. If he chose to dispose of them by carrying them just across the street to the person to whom they belonged instead of depositing them in the place said to have existed for dumping purposes, it was apparently an exercise of his own judgment as to how the work should be accomplished in the absence of explicit instructions. We are not willing to say that by so disposing of the bottles, the decedent departed from the course of his employment, in the absence of proof that he was disobeying instructions or that he was pursuing the course he did pursue for reasons of his own or at the request of persons other than the employer.

All the circumstances surrounding the employment, and the type of work and the manner of doing it, raise a presumption, we think, that the decedent was in the course of his employment when he met his death crossing the street, and that the accident arose out of and in the course of the employment. The countervailing proofs necessary to rebut this presumption are not to be found in the record.

The writ of *certiorari* is dismissed, with costs.